UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SANGISETTY LAW FIRM, LLC            CIVIL ACTION

VERSUS            NO: 25-1561

JASON JOY & ASSOCIATES, PLLC            SECTION: "J"(5)
ET AL.

## ORDER AND REASONS

Before the Court is an Exception of Prematurity that the Court will treat as a *Motion to Compel Arbitration* **(Rec. Doc. 1-3, at 30–35)** filed by Defendants Jason Joy & Associates, PLLC and Colin Wood.[1] Plaintiff Sangisetty Law Firm, LLC opposed the motion to compel arbitration (Rec. Doc. 17), and Defendants filed a reply memorandum (Rec. Doc. 19). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion to compel arbitration should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

This litigation arises out of Plaintiff and Defendants' agreement to assume joint representation of clients who had formerly been represented by McClenny Moseley and Associates ("MMA"). Initially, Plaintiff and Defendant Jason Joy & Associates, PLLC ("JJA")[2] executed a "Joint Venture Agreement," the professed purpose of which was to "facilitate the transfer" of these clients' files. (Rec. Doc. 4-2, at 1). In this agreement, Plaintiff and Defendants agreed to an arbitration clause and

---

[1] Kathleen O'Connor is also a named defendant in this matter, but as of February 23, 2026, she had not made an appearance on the record, and she did not join the other defendants in the instant motion.
[2] Defendant Colin Wood was a partner at JJA when the events leading to this litigation transpired. JJA and Colin Wood will be referred to collectively as "Defendants."

1

specifically expressed their intent "to work collaboratively to effectuate an expedited and efficient transfer of the clients from the Previous Firm." *Id.* Plaintiff explains, however, that the transfer of the clients' files from MMA was not as expedited and efficient as MMA had allegedly promised, and therefore, "the MMA project that Joy and Sangisetty originally contemplated and envisioned . . . had morphed into something completely different and vastly more complicated." (Rec. Doc. 17, at 3 (quoting Jason J. Joy & Associates, PLLC's Compl. in Intervention, No. 25-318, at 16–17 ¶ 50 (S.D. Tex. Apr. 11, 2025)). As a result, Plaintiff claims that the parties implicitly decided that the Joint Venture Agreement would no longer govern their arrangement to represent former MMA clients jointly; instead, Plaintiff contends that the contingency fee agreements that Plaintiff and Defendant JJA jointly entered into with clients, and which also specified the firms' fee-splitting arrangement, became the new agreement between the Plaintiff and Defendants. Defendants dispute these claims and move the Court to compel arbitration.

On February 28, 2025, Plaintiff filed the instant lawsuit in the 32nd Judicial District Court for the Parish of Terrebonne, State of Louisiana. Chief among Plaintiff's claims is that Defendants breached the agreement to share in the joint representation of former MMA clients equally and, therefore, are not entitled to legal fees. As their first responsive pleading, Defendants filed an Exception of Prematurity based on the Joint Venture Agreement's arbitration clause. On July 30, 2025, Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446, averring that the Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Rec. Doc. 1). Plaintiff filed a motion to transfer or dismiss on August 5, 2025, arguing that

2

its agreement with Defendants was governed by a forum-selection clause and requesting that the case be transferred back to the 32nd Judicial District Court or dismissed. Conversely, Defendants alleged, and the Court agreed, that the forum-selection clause, which was found in the "Hurricane Contingency Fee Agreements" and *not* in the Joint Venture Agreement, did not apply as between Sangisetty and Jason Joy & Associates. Accordingly, the Court denied Plaintiff's motion to transfer or dismiss the case. Further, because the Joint Venture Agreement executed by Plaintiff and Defendants contained an arbitration clause, the Court ruled that it would treat the Exception of Prematurity that Defendants filed in the state court proceeding as a motion to compel arbitration. Therefore, the issue that the Court must decide is whether the parties should be held to the arbitration clause that they initially agreed to in the Joint Venture Agreement.

## **LEGAL STANDARD**

Arbitration agreements are governed by the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 1–16. Section 2, "the primary substantive provision of the Act," reflects "a liberal federal policy favoring arbitration agreements" and effectively creates "a body of federal substantive law of arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The United States Court of Appeals for the Fifth Circuit has observed that "Congress' clear intent, in the Arbitration Act, was to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Snap-on Tools Corp. v. Mason*, 18 F.3d 1261, 1263 (5th Cir. 1994) (internal quotations omitted, cleaned up).

Under the FAA, district courts are required "to 'compel arbitration of otherwise

arbitrable claims, when a motion to compel arbitration is made.'" *Harris v. JCPenney Co., Inc.*, No. 07-9675, 2008 WL 90038, at *1 (E.D. La. Jan. 8, 2008) (quoting *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1147 (5th Cir. 1985)). When evaluating motions to compel arbitration, courts conduct a two-step inquiry. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). The Court first inquires whether the parties agreed to arbitrate the dispute at issue. *Id.* This inquiry consists of two subsidiary questions: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir. 1996) (citation omitted).

To determine whether the parties formed a valid agreement to arbitrate, courts apply ordinary principles of state contract law. *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537–38 (5th Cir. 2003). On the other hand, in analyzing arbitrability, courts apply federal substantive law. *Graves v. BP Am., Inc.*, 568 F.3d 221, 222–23 (5th Cir. 2009) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). Moreover, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24–25 (citations omitted). When a court finds that the parties entered a valid agreement to arbitrate and that the dispute in question falls within the scope of this agreement, it moves to the second step of the arbitration inquiry, assessing "whether any federal statute or policy renders the claims nonarbitrable." *Washington Mut. Fin.*

4

*Grp., LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004) (citation omitted).

Finally, under Section 3 of the FAA, a district court must stay a lawsuit when a party demonstrates that any issue involved in the lawsuit is "referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. This provision is mandatory and demands a stay of legal proceedings "whenever the issues in a case are within the reach of an arbitration agreement." *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993) (citation omitted). When these circumstances are present, a district court "has no discretion under section 3 to deny the stay." *Id.* (citation omitted).

## DISCUSSION

Plaintiff does not assert that a federal statute or policy renders its claims against Defendants nonarbitrable. Therefore, the Court must determine first whether Plaintiff and Defendants validly agreed to arbitrate disputes and then whether the dispute in this case falls within the scope of their arbitration agreement. The Joint Venture Agreement that Plaintiff and Defendants executed contains an arbitration agreement that reads as follows:

> **VIII. Binding Effect / Governing Law / Mediation.**
> Should any dispute arise out of this Agreement, the parties agree to binding, non-appealable arbitration pursuant to the rules of the American Arbitration Association, limited to a maximum of four days divided equally between the parties; each to have, at most, two days to present its case. The parties agree that both parties contributed to the drafting of this agreement; therefore, the parties agree not to assert against the other party a cannon [sic] of construction against the draftsman.

(Rec. Doc. 16-2, at 2). Neither party disputes that this is a valid arbitration agreement; instead, Plaintiff maintains that the Joint Venture Agreement governed

5

only the initial transfer of the client files from MMA, and more importantly, because the nature of the joint venture changed, the parties implicitly agreed, through their discussions and their conduct, that the Joint Venture Agreement no longer governed their joint representation of clients.

Plaintiff objects to the Court's decision to treat Defendants' Exception of Prematurity as a Motion to Compel Arbitration (Rec. Doc. 15) and urges the Court to reconsider. To support its position, Plaintiff argues that the Court should consider late-filed evidence based on "the need to render just decisions on the basis of all the facts." (Rec. Doc. 16-1, at 3 (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990))). Specifically, attached to its original Motion to Transfer/Dismiss, Plaintiff had submitted a sample "Hurricane Contingency Fee Agreement" (Rec. Doc. 4-4) that Plaintiff and Defendants used for their joint representation of clients. Plaintiff argued that the contingency fee agreement's forum-selection clause—rather than the arbitration agreement in the Joint Venture Agreement—should govern disputes between Plaintiff and Defendants. Because it was a sample, however, the agreement that Plaintiff initially submitted (Rec. Doc. 4-4) did not include a fee-splitting arrangement, which was a fact that the Court cited in its ruling on the Motion to Transfer/Dismiss.

In re-urging its Motion, Plaintiff attached copies of "Hurricane Contingency Fee Agreements" that were executed jointly by Plaintiff Sangisetty Law Firm and Defendant Jason J. Joy & Associates with clients, and these later-filed agreements do contain the fee-splitting arrangement between the law firms. The relevant provision is reproduced below:

> Client agrees to a joint representation by Jason J. Joy & Associates ("**JJJ**") and Sangisetty Law Firm, LLC ("**SLF**") who will represent Client in accordance with the applicable rules of professional conduct and assume "joint responsibility" for Client's case. In the event of a successful recovery the Firms shall split the contingency fee evenly, on a 50/50 basis.

(Rec. Doc. 16-4, at 2 (citing Tex. Disciplinary Rules of Pro. Conduct Rule 1.04 and its official Comments for the definition of "joint responsibility")). Because the agreements that Sangisetty and Jason J. Joy & Associates executed jointly with clients specified the fee-splitting arrangement between the attorneys,[3] Plaintiff claims that the forum-selection clause from that same agreement should govern the relationship between the law firms, in addition to governing any potential disputes between the firms and the clients whom they agreed to represent jointly.

The Court disagrees with this argument for two primary reasons. First, the forum-selection clause in the contingency fee agreement reads as follows: "In the event of a dispute and/or claims between them, *the Parties to this Agreement* agree that venue shall be in the 15th Judicial District Court in Acadia or Lafayette Parish, Louisiana, or the 32nd Judicial District Court in Terrebonne Parish, Louisiana **only**." (Rec. Doc. 16-4, at 4 (emphasis added)). The agreement also includes both firms' logos at the top of the first page, and the signature lines for the parties to the agreement are found below the forum-selection clause on the third page. Here, there are only two signature lines: one for the Client and one for the Attorney. The formatting of the signature lines indicates that there are only two parties to the contingency fee

---

[3] When attorneys agree to joint representation of a client, they are obligated to obtain the client's consent in writing "to the terms of the arrangement," which means that Sangisetty and Jason J. Joy & Associates were required to include the fee-splitting arrangement in the agreement they executed jointly with clients. *See* Tex. Disciplinary Rules of Pro. Conduct Rule 1.04 (State Bar of Tex. 2025).

agreement: the Client on one side of the transaction and the law firms, Sangisetty and Jason Joy & Associates, who are acting jointly, on the other.

Further, Plaintiff and Defendants had previously executed the Joint Venture Agreement that included the arbitration clause at issue. The Court agrees with Plaintiff that this Joint Venture Agreement did not specify the fee-splitting arrangement, but instead stated that "such was to be determined at a later date and based on the actual work done on each of the client files." (Rec. Doc. 4-1, at 3). However, both parties in this matter are legally sophisticated—they are lawyers after all—and they recognized, at least initially, that they should execute an agreement that would govern their relationship as to the joint representation of clients. The fact that Plaintiff claims they did not follow this Joint Venture Agreement is irrelevant.[4] If the parties had wanted the forum-selection clause, rather than the arbitration clause, to apply to their relationship, they easily could have specified that either in the Hurricane Contingency Fee Agreement or in a separate agreement between themselves. Moreover, if the parties intended to rescind the Joint Venture Agreement, they could have done so in writing and/or by executing a new written agreement.

---

[4] Plaintiff alleges that Jason J. Joy & Associates conceded in court filings in the Southern District of Texas that the Joint Venture Agreement no longer governed their agreement. For example, Jason J. Joy & Associates wrote, "As far as the parties were concerned the original [Joint Venture] Joy—Sangisetty agreement was never again mentioned nor referenced." (Rec. Doc. 16-1, at 4). Further, Jason J. Joy & Associates allegedly stated in court filings that the "MMA project that Joy and Sangisetty originally contemplated and envisioned in June 2023 had morphed into something completely different and vastly more complicated. Ultimately, Joy and Sangisetty agreed to split attorney fees on a 50/50 basis, and that arrangement is reflected in the contingency fee agreements executed by JJA-SLF clients, and acknowledged by the parties." *Id.* at 4–5. However, it does not logically follow that because the contingency fee agreements governed the firms' fee-splitting arrangement (which is required), the agreement dont also governed every aspect of the firms' relationship concerning their joint representation of clients.

Next, Plaintiff asserts that Defendants waived their right to seek arbitration because they substantially invoked the judicial process. Specifically, Plaintiff contends that Defendants invoked the judicial process when they emailed copies of *subpoena duces tecum* requests to Plaintiff, among other parties, in the state court proceeding on June 23, 2025, prior to removal. The Fifth Circuit has established that despite the strong federal policy favoring arbitration, a party can waive its right to arbitration when the party "knowingly relinquish[es] the right to arbitrate by acting inconsistently with that right." *Garcia v. Fuentes Rest. Mgmt. Servs., Inc.*, 141 F.4th 671, 676 (5th Cir. 2025) (quoting *Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022)).

Substantial invocation of the judicial process constitutes "one way of demonstrating that a party waived its right" to compel arbitration, *id.*, and it requires that a "party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration," *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999). Generally, however, there exists a "presumption against finding waiver" in the Fifth Circuit, and "[a] party asserting waiver thus bears a heavy burden of proof in its quest to show that an opponent has waived a contractual right to arbitrate." *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991) (citations omitted).

Here, Plaintiff argues that Defendants' requests for document production represented a substantial invocation of the judicial process. Defendants counter by pointing out that their first responsive pleading to Plaintiff's state-court petition was an exception of prematurity seeking to dismiss the case without prejudice so that the parties could arbitrate their dispute instead. The Court takes judicial notice of the

9

fact that Defendants sought to compel arbitration at the earliest stage of this litigation, but even if that were not the case, the Court also finds that emailing copies of *subpoenas duces tecum* to Defendants does not constitute a substantial invocation of the judicial process. *See, e.g.*, *Garcia*, 141 F.4th at 678 (concluding that the exchange of one set of interrogatories, requests for production, and responses between the parties was "similar to 'the minimal discovery' that [the Fifth Circuit had] previously considered insufficient to waive arbitration").

Plaintiff argues that Defendants also substantially invoked the judicial process when they filed a Complaint in Intervention against both MMA and Sangisetty in the United States District Court for the Southern District of Texas. The Court fully agrees with Plaintiff that Defendants have represented their position inconsistently in their court filings in the Southern District of Texas and in this Court. However, the Fifth Circuit regularly emphasizes that a party opposing arbitration bears a heavy burden to prove waiver. While Defendants have sought to intervene in the case filed by MMA against Sangisetty in the Southern District of Texas, Defendants did not initiate that lawsuit. Furthermore, in their earliest responsive pleading to Plaintiff's state-court petition, Defendants raised an exception of prematurity based on the arbitration clause found in the Joint Venture Agreement. Therefore, the Court concludes that Defendants have not waived their right to compel arbitration in this matter.

Finally, Plaintiff contends that its lawsuit involves claims that are not subject to any agreement between itself and Defendants. Specifically, Plaintiff alleges that some of its claims against Defendants are based on their "agreeing to perform work

which [they] did not do, [their] malfeasance in over-delegating responsibilities to non-attorney, third party vendors, [their] utilizing work product of SLF to solicit clients for malpractice matters when [Defendants were] told [they] had a conflict of interest, and other conduct related to the actual representation of the clients, i.e., not the client file transfers." (Rec. Doc. 17, at 16). Ultimately, the Court finds this argument unavailing. All of these claims relate directly to and arise out of the joint venture between Sangisetty and Jason Joy & Associates. At least initially, the parties agreed that the joint venture would be governed by the Joint Venture Agreement, which contained the arbitration clause. Each of the claims that Plaintiff lists falls logically under the venture to represent clients jointly, and the Fifth Circuit has made it clear that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25 (citations omitted). Therefore, the Court finds that these disputes fall within the scope of the arbitration agreement.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the *Motion to Compel Arbitration* is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter be **STAYED** pending arbitration.

New Orleans, Louisiana, this 23rd day of February, 2026.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

11